68 So.2d 577 (1953)
SENTCO, Inc.
v.
McCULLOH.
Supreme Court of Florida. Special Division A.
November 20, 1953.
Hal H. McCaghren, West Palm Beach, and Allen Clements, Jr., Miami, for appellant.
Philip E. Paine, Miami, for appellee.
MATHEWS, Justice.
This is an appeal from a final decree dismissing a bill of complaint.
The bill of complaint sought a restraining order or an injunction to prevent the defendants (appellees) from imitating plaintiff's product, advertising and trade-mark, and for an accounting on damages suffered by the plaintiff by reason of unfair competition.
The territory involved appears to be Broward and Dade Counties. The facts are well set forth in the Opinion and Final Decree made by the Circuit Judge, parts of which read as follows:
*578 "The evidence has produced no substantial factual dispute.
"In June, 1951, the plaintiff company began the manufacture and marketing of a unique insecticide vaporizer which the company's president had originated and designed. The device is an ordinary muffin cup (familiar to most housewives) to which wire stabilizers are soldered so that it may be attached to an electric light bulb. The plaintiff company also sells, for use in the vaporizer, an insecticide known as lindane, which is produced and distributed by a California chemical company. When the device, with lindane in the cup, is fastened to a lighted bulb the heat vaporizes the insecticide and the diffused fumes kill mosquitoes, flies, roaches and other insect pests within the area of penetration. The plaintiff company calls its product `Vap-O-Lite' and the trade-mark name is registered in the office of the secretary of state.
"In Steptember, 1951, the defendant company, which had been manufacturing and selling a larger and more expensive type of vaporizer, began the production and marketing of an insecticide vaporizer identical with the plaintiff company's device. It is made of the same material and is the same size, shape, color and design. The same insecticide is sold for use with the vaporizer. The defendant company has given the name of `Exterm-O-Lite' to its product. The plaintiff company's packaging methods have been adopted by the defendant company, the written instructions issued by the former for the guidance of purchasers in the use of its vaporizer have been substantially copied by the latter, and the content of the defendant company's newspaper advertising has been substantially duplicated by the defendant company.
"The evidence warrants the statement that the defendant company has deliberately imitated the plaintiff company's device, appropriated its ideas and methods and is sharing in a market created by the ingenuity, judgment and efforts of the plaintiff company's managing officer. There is no doubt that the defendant company, by selling its product at a lower price, has impaired the monopolistic advantage which otherwise the plaintiff company would be enjoying.
"The plaintiff company contends that the defendant company is guilty of unfair and illegitimate competition and seeks injunctive relief and damages.

* * * * * *
"The plaintiff company's vaporizer is not protected by a patent. While it is undeniably true that the defendant company is the beneficiary of the good will of the plaintiff company's product and is sharing in a market created by the latter and extended by its expenditures for advertising and other promotional purposes, the competition is not for that reason alone unfair, and illegitimate. As the author observes, in Mims' Unfair Competition and Trade-Marks (Vol. 1, at page 370), where there is no monopoly such as a patent confers anyone may reproduce an article originated by another and sell it with the representation that it is the same article so long as he excludes the notion that it is the other's article. Judge Learned Hand, voicing the court's opinion in Crescent Tool Co. v. Kilborn & Bishop Co., infra [247 F. 301], said that `the defendant * * * may copy the plaintiff's goods slavishly down to the minutest detail; but he may not represent himself as the plaintiff in their sale.'

* * * * * *
"* * * there is a want of proof that the defendant company has violated its duty to obviate confusion in the minds of the consuming public by distinguishing its product from that of the plaintiff company. By appropriate labels and markings, by an adequate display of its name as the manufacturer in its advertising and on its packages, and by the use of a distinctive and different name, `Exterm-O-Lite,' the defendant company sufficiently identifies its product and distinguishes it from that of the plaintiff company." (Emphasis supplied.)
The difference in the names Vap-O-Lite and Exterm-O-Lite is not material in view of the other facts in the case as found by the Chancellor. It is not necessary *579 that there be an infringement of a copyrighted name or a patent in order for unfair competition to exist. The Chancellor stated, "The plaintiff company's vaporizer is not protected by a patent." Whether there was a patent or not, the undisputed facts in the case, as found by the Chancellor, were sufficient to justify the conclusion of the Chancellor that the defendant company "is the beneficiary of the good will of the plaintiff company's product and is sharing in a market created by the latter and extended by its expenditures for advertising and other promotional purposes."
The Chancellor then found that these facts standing alone were not sufficient to show unfair competition. This conclusion of the Chancellor appears to be in direct conflict with his findings of fact that the defendant company marketed the product of an insecticide vaporizer identical to that of the plaintiff; that it was made of the same material and is the same size, shape, color and design; that the plaintiff company's packaging methods have been adopted by the defendant; the written instruction issued to prospective purchasers have been substantially copied by the defendant; that the newspaper advertising had been substantially duplicated by the defendant; that the defendant had "deliberately imitated the plaintiff company's device, appropriated its ideas and methods and is sharing in a market created by the ingenuity, judgment and efforts of the plaintiff company's managing officer"; that there is no doubt that the defendant company, by selling its product at a lower price has impaired the monopolistic advantage which otherwise the plaintiff company would be enjoying.
The conclusion that the defendant has not violated its duty to obviate confusion in the minds of the consuming public also appears to be in direct conflict with the findings of fact.
The only real difference in the product as packaged, advertised and sold appears to be the difference in the name of Vap-O-Lite used by the plaintiff and Exterm-O-Lite as used by the defendant. The original exhibits were before this Court and the difference in names did not stand out sufficient to overcome the sameness of all other features in connection with the packaging, advertising and marketing of the product.
The case of Crescent Tool Co. v. Kilborn & Bishop Co., 2 Cir., 247 F. 299, has been cited as authority for dismissing the bill of complaint in this cause. In that case the opinion was written by the Honorable Judge Learned Hand. In the course of the opinion it is stated:
"* * * The critical question of fact at the outset always is whether the public is moved in any degree to buy the article because of its source and what are the features by which it distinguishes that source. * * *
"In the case at bar it nowhere appears that before 1910, when the defendant began to make its wrenches, the general appearance of the plaintiff's wrench had come to indicate to the public any one maker as its source, or that the wrench had been sold in any part because of its source, as distinct from its utility or neat appearance. It is not enough to show that the wrench became popular under the name `Crescent'; the plaintiff must prove that before 1910 the public had already established the habit of buying it, not solely because they wanted that kind of wrench, but because they also wanted a Crescent, and thought all such wrenches were Crescents."
The Chancellor in the case at bar found that the plaintiff had built up a good will and that "it is undeniably true that the defendant company is the beneficiary of the good will of the plaintiff company's product." The defendant had "deliberately imitated the plaintiff company's device, appropriated its ideas and methods and is sharing in a market created by the ingenuity, judgment and efforts of the plaintiff company's managing officer." The findings of the Chancellor meet the test laid down by Judge Hand in the case of Crescent Tool Co. v. Kilborn & Bishop Co., supra.
*580 The principles set forth in the case of Wesson v. Galef, D.C., 286 F. 621, 624, in another opinion by Judge Learned Hand, appear to be applicable in the case at bar. In that opinion it was stated:
"There appears to me not the slightest question that all the infringing revolvers were deliberately made for the purpose of imitating a model of the plaintiff". In the case of Galef and Newmark they correspond in dimension even by guage, a coincidence wholly impossible in the absence of conscious imitation. In the case of Gluck, the visual similarity is as complete. Such things do not happen because manufacturers are merely following old patents.
"Little identical features in the two lay the matter beyond doubt, if doubt could remain. * * *
"The combination of all these features being, as I have said, an unescapable evidence of purpose to imitate, the only conclusion I can come to is that that purpose was in turn actuated by a desire to sell the Spanish revolver as a Smith & Wesson. What precautions did the makers take to avoid this result? They added their names, their trade-marks, their monograms on the scutcheon, and, as the law required, the place of manufacture, Spain. On these, as is customary, they rely to escape the inference to be drawn from their imitation. All these are either placed in so inconspicuous positions as not to attract the eye, or, as in the case of the scutcheon and the trade-mark, are so little distinguishable from the plaintiffs' similar marks as to be of very little service, if any whatever. * *"
In the present case we are not dealing with the statutory rights created by a patent or a trade-name. We are dealing more with the broader question of unfair competition where fairness, decency and common honesty are involved. A person cannot use his own name if it is done with the fraudulent intent of appropriating the good will of a business established and built up by another person of the same name. In the case of Glazer v. Hoffman, 153 Fla. 809, 16 So.2d 53, 56, this Court said:
"* * * Likewise, a person is not permitted to use even his own name with fraudulent intentions of appropriating the good will of a business established and built up by another person of the same name. Losses in a financial manner cannot thusly be inflicted on a rival competitor. See Children's Bootery v. Sutker, 91 Fla. 60, 107 So. 345, 44 A.L.R. 698; El Modello Cigar Mfg. Co. v. Gato, 25 Fla. 886, 7 So. 23, 6 L.R.A. 823, 23 Am.St.Rep. 537."
In the case of McGhan v. McGhan, 115 Fla. 414, 155 So. 653, 654; this Court said:
"An infringement on a trade-name is such a colorable imitation thereof that the general public, in the exercise of reasonable care, might think that it is the name of the one first appropriating it. Where such a similarity occurs and it tends to divert trade from a business rival, it is considered a fraud, and is subject to being enjoined, although the prior user may not have an exclusive right to the use of the name. To entitle a person to relief a proprietary interest in the name is not held to be essential; it being sufficient to show that complainant has an interest in the good will of the business threatened by the alleged unfair competition. It is the injury to a competitor caused by deceptive and fraudulent conduct that is the ground upon which courts of equity act in affording relief, and the right to relief is predicated upon the accepted principles of common business integrity. * * *"
The recent case of Florida Ventilated Awning Co. v. Dickson, Fla., 67 So.2d 215, has some of the aspects of the case now under consideration. The names were slightly different. One company used the name "Ventilated Awning" in its title and the other used "Ventilated Awning Shutter." *581 The first company conducted a general advertising campaign and after the market had been established, the second company conducted an advertising campaign in which it employed the identical features, formats, ribbons, checklists, phrases and expressions which the first company had used in advertising and marketing the product. The Chancellor not only permanently enjoined the second company from using the name, but he further enjoined it from using any picture, sketch, display, checklist, format or other device for advertising its product similar to plaintiffs'. The Chancellor refused to award damages because he was unable to point out a sufficient predicate on which a sum could be awarded and said that any sum would be pure speculation. This Court affirmed the decree of the Chancellor.
In the case at bar the bill of complaint contained equity and the plaintiff company was entitled to some of the relief prayed for. The plaintiff company was entitled to an order as prayed for enjoining the defendants from using the same packaging methods, written instructions for the guidance of purchasers, newspaper advertising, imitating the plaintiff company's device, and appropriating its ideas and methods created by the ingenuity, judgment and efforts of the plaintiff company's managing officer, within the territory involved as shown by the record. There does not appear to be a sufficient predicate to determine whether a definite sum for damages could be awarded. From the record now before us it appears that any award for damages may be pure speculation.
The final decree dismissing the bill of complaint should be set aside and further proceedings had in accordance with this opinion.
Affirmed in part and reversed in part, for further proceedings in accordance with this opinion.
TERRELL, Acting Chief Justice, SEBRING, J., and PARKS, Associate Justice, concur.