CHEMICAL CORPORATION OF AMER-
ICA, Appellant,

v.

ANHEUSER–BUSCH, INCORPORATED,
Appellee.

No. 19007.

United States Court of Appeals
Fifth Circuit.

Aug. 15, 1962.

Rehearing Denied Nov. 19, 1962.

Julius F. Parker, Caldwell, Parker, Foster, Madigan & Oven, Tallahassee, Fla., for appellant.

Roy A. Lieder, St. Louis, Mo., J. Lewis Hall, Tallahassee, Fla., Owen J. Ooms, Ooms, Welsh & Bradway, Chicago Ill., Gravely, Lieder & Woodruff, St. Louis Mo., for plaintiff-appellee, Hall, Hartwell & Douglass, Tallahassee, Fla., of counsel.

Before TUTTLE, Chief Judge, and BROWN and BELL, Circuit Judges.

TUTTLE, Chief Judge.

This is a suit brought by the appellee, Anheuser-Busch, Incorporated, the owner of the slogan, "Where there's life . . . there's Bud," used in the sale of Budweiser beer, seeking to enjoin, as an infringement, a slogan subsequently adopted and used by the defendant-appellant in the sale of a combined floor wax and insecticide, "Where there's life . . . there's bugs." After a full trial on the merits, the trial judge granted a permanent injunction against the use of the "Bugs" slogan by the appellant.

The record on appeal fully warrants findings by the trial court of the following facts quoted from the court's "Findings of Fact:"

"Plaintiff is engaged in the manufacture and sale of various food and beverage products. The most notable of its products is Budweiser beer. This beer is also advertised and marketed under the name of "Bud" as well as Budweiser beer. Both of these names have been registered as trademarks in accordance with the provisions of the Lanham Act, 15 U.S.C. Section 1051, et seq. In October, 1960, after this suit was commenced, plaintiff registered 'Where there's life . . . there's Bud' and 'Where there's life . . . there's Budweiser' on the supplemental register under the provisions of the Lanham Act.

"In 1933 plaintiff began using the slogan 'Where there's life . . . there's Budweiser' in its advertising. From 1933 to 1956 plaintiff used the slogan infrequently. In 1956 plaintiff undertook sales campaigns employing the slogans and trademarks 'Where there's life . . . there's Bud'. Plaintiff, having found that the slogans were effective in successfully marketing its product, spent in excess of $40,000,000.00 in advertising which contained the two slogans. Plaintiff advertised Budweiser beer with the slogans and trademarks on radio stations, television, national billboards, newspapers and national circulated magazines. The evidence shows that plaintiff's sales have increased since 1956 and a great portion of the increase is attributable to the success of plaintiff's advertising.

"The slogans were not affixed directly on the bottles or upon the beer cans, nor upon the labels on the bottles and cans. Some of the cartons and containers used in packaging and for carrying plaintiff's beer bore one or more of the slogans. These cartons and containers cost plaintiff approximately $9,000,000.00.

"In an effort to determine the effectiveness of the advertising program, plaintiff employed advertising surveys to determine whether the public was acquainted with the plaintiff's slogans, and whether the public associated the slogans with plaintiff's product. The results of the surveys showed that a substantial portion of the public was not only acquainted and familiar with the slogans but also associated the slogans with Budweiser beer.

"The court finds that as a result of the wide dissemination of advertising employing the slogans, for the long period which plaintiff has used the slogans in advertising its product, that the public did, in fact, know the slogans, associated the slogans with the products, and associated plaintiff as the source of the advertising.

"The court also finds that the slogans which were placed upon the containers and cartons were sufficient to identify the product.

"Defendant is engaged in the manufacture and sale of a floor wax which contains an insecticide. The product is sold under the name of Freewax. It has heretofore been marketed primarily in the Southern part of the United States. Defendant had been using the slogan 'Life on Floors . . . Death on Bugs' to advertise its product.

"At the time that the idea to use 'Where there's life . . . there's Bugs' arose, defendant knew that plaintiff was using the slogans 'Where there's life . . . there's Bud' and 'Where there's life . . . there's Budweiser'.

"On July 7, 1960, defendant, after warnings by plaintiff not to use the slogan, advertised Freewax on television in the Tallahassee, Florida—Thomasville, Georgia area.

"The court finds from listening to the tapes, and from watching the film strips, that defendant's use of the slogan was confusingly similar to plaintiff's. This is not to say that the tunes or the words in the advertising were exactly the same, but from the rhythm, meter and the pictures which appeared at the time that the slogan was used, when taken as a whole, created the impression that defendant's advertising had some connection with the plaintiff or plaintiff's product. Some of defendant's film strips show drinking glasses being filled, people dancing, and a simultaneous use of the slogan 'Where there's life . . . there's Bugs'. These films follow a format which plaintiff had employed for some four years. The court finds that the advertising of defendant is deceptively similar, so as to confuse the advertising of plaintiff and defendant.

"The court also finds that the value and effectiveness of plaintiff's prior advertising is impaired to some extent by the deceptively similar phraseology and treatment employed by defendant in its advertising. Unless enjoined, there is sufficient likelihood to damage to plaintiff, despite the fact that the court finds that no recompensable damages were incurred by plaintiff.

"The goods of plaintiff and the goods of defendant are not competitive, but the goods of plaintiff and defendant are sold at the same retail outlets and the association of bugs with Bud or Budweiser is sufficient to merit the apprehension that the ill repute of one type of goods is likely to be visited upon the other."

Without making any significant attack on the findings of fact, appellant here contends that these facts do not, under the Florida law, which appellant contends is the standard to be applied, provide basis for the granting of an injunction. Appellant's basic contention is that since it is clear that plaintiff and defendant are not in actual competition in the sale of their products—the one selling beer and the other selling a combined insecticide and floor wax—it has every right to appropriate and make use in any way it sees fit of the slogan which the appellee has popularized by the expenditures of effort and money over the years, regardless of any resulting injury or damage to the appellee caused by any confusion as to the source of the insecticide or by any dilution of or depreciation of the value of the slogan.

Appellee contends, on the contrary, that it has: (1) a federal right under the

Lanham Act, 15 U.S.C.A. § 1114(1), which point was ruled against it by the trial court, and (2) a state common law action under the Florida law. It contends that the trial court properly found threatened injury to its common law trademark or business slogan and acts of unfair competition justifying the intervention of a court of equity. We shall first discuss the issue on the assumption that it is controlled solely by the Florida laws as in a diversity case.

■ We first dispose of the appellant's contention that the appellee is here seeking to preempt for itself exclusive use of any slogan containing the words "Where there's life." This is clearly not embraced in any claim made by the appellee. The appellee says merely that the complete slogan, "Where there's life . . . there's Bud," has, through its wide and repeated use, particularly by radio and television programs, become in fact identified with its product, Budweiser beer, and with it as the manufacturer of the product. It says that the defendant's use of a slogan that is deceptively similar to the *entire* slogan created by it is the thing to be restrained. It is obvious to any listener or reader that from any point of view from which it may be heard or seen it is the completed "bugs" slogan that is deceptively familiar with the "Bud" slogan, rather than merely the use of the words, "Where there's life." We conclude, therefore, that any protection that may be afforded to the appellee on the facts of this case would not, as fully recognized by the appellee, result in the appropriation of the words, "Where there's life," in combination with all other words by the appellee to the exclusion of all others.

The main thrust of the appellant's argument in this Court is that the absence of direct competition between Anheuser-Busch and Chemical Corporation of America in the sale by the former of beer and the sale by the latter of floor wax, prevents a court of equity, applying Florida law, from enjoining a deceptively similar slogan used by the latter in the sale of its products, notwithstanding the finding of the trial court that the adoption of the "bugs" slogan was with knowledge of the "Bud" slogan, and that the use of the "bugs" slogan would cause confusion in the minds of the public as to the source of the floor wax product and would damage the "public image" of the appellee by associating in the minds of the public the idea of bugs with a food product.

Appellant supports this thesis by referring to Florida cases in which the courts stress the matter of competition in cases in which the owner of a trademark has attempted to prevent its use by another in the sale of the same or similar products, particularly Stagg Shop of Miami, Inc. v. Moss, 120 So.2d 39, a case decided by the District Court of Appeals of Florida for the Third District, and Webb's City, Inc. v. Bell Bakeries, 5 Cir., 226 F.2d 700, a case decided by this Court in which we applied the Florida law. These cases do not reach the issues here presented. They both dealt with suits by the prior owner of a trademark in a particular locality to prevent the use of a similar name or mark by another person selling the same products, either in a different area or under circumstances in which the trial court found that there was in fact no customer confusion. The Stagg case dealt with a claim by the owners of a store which bore the name "Stagg Shop of Miami, Inc." and which the Court found to have served customers principally within the Miami area, and later under a similar name in the Coral Gables area. The plaintiff sought injunctive protection against a later user of a similar name upon his opening a store for the same type of merchandise with the same name in West Palm Beach, Florida. The plaintiffs in the case pitched their claim for an injunction on the contention that there was a possibility of close competition in the future, so as to entitle them to the requested relief. They thus sought to preempt a name in an area in which their name had not thus far been recognized or established to prevent another person from using a similar name. Under such circumstances the Court properly held

that actual competition was the gist of the action. It did not hold, as it could not under the case before it, that there would be no other basis for an action under the Florida law for unfair competition or an injunction to prevent appropriation by a second user of a similar slogan or name where there was an actual threatened confusion of the source of the product or threatened injury to the good name of the first user.

Thus, too, was the holding of this Court in the Webb's City case restricted to a situation in which an injunction was sought based on the contention that the appropriation by the plaintiff of the name "Dandy" was an absolute preemption which could be enforced by injunction against any other user without the necessity of showing any confusion or threat of confusion. In such a case this Court properly said:

> "The gravamen of the tort in all cases is customer confusion, and this having been affirmatively disproved, there was no actionable wrong shown."

It must be remembered that there was no other allegation or proof of damage or injury to the plaintiff, Webb's City, except that the other party was threatening or was actually using a similar name.

■ Such is not the case here. The gist of this action is that the plaintiff has a property interest in the slogan, built up at great expense, and that it and its products are favorably known as a result of its use of this property right and that the defendant, with full knowledge of the right and with the purpose of appropriating some of the value engendered in the minds of the public by its use has used, and proposes further to make use of, a deceptively similar slogan in a manner that will bring direct financial loss to the plaintiff, both by reason of confusing the source of the defendant's product, and by reason of the peculiarly unwholesome association of ideas when the word "bugs" was substituted in the slogan for the word "Bud," referring to a food product. Upon consideration of

this theory of the case, the trial court considered it as an action for unfair competition and said:

> "The defendant urges that since its floor wax and plaintiff's beer are not competitive products that plaintiff is, therefore, denied protection otherwise plainly available to it under well defined standards of unfair competition. This, the court finds to be a misapplication of the equitable doctrine of unfair competition. Parties need not be in direct competition for the doctrine to be effective. Bulova Watch Co., Inc., v. Stoltzberg, 69 F.Supp. 543 (D.C.Mass.1947). It was the basic unfairness in the commercial world of which this court took cognizance."

We think this view by the trial court is amply supported by the decisions of the Florida courts showing great concern for the rights of a person who after establishing a substantial market by an expensive advertising campaign and otherwise enjoying an established business identified with the name, slogan, or other attribute of good will, is then damaged by the use by another of his name or slogan.

Thus, the Florida Supreme Court, in Sun Coast, Inc. v. Shupe et al., 52 So.2d 805, a case in which the court found that the defendant had not done any illegal act, stated the test in a negative manner. It said:

> "As applied to the particular circumstances of this case, we are convinced that appellants have alleged nothing to show that the public would be tricked or appellants' affairs damaged, or even complicated, because a person trading with appellees in real estate might think he was dealing with appellant, a hotel proprietor."

■ To the contrary, in the case now before us, the Court has found on a record amply supporting its findings, that the public would be "tricked" and that the appellee's "affairs would be damaged," and certainly "complicated," by the

threatened action of the appellant. So, too, did the Supreme Court of Florida show its concern for preventing unfair competition in Sentco, Inc. v. McCulloh, 68 So.2d 577 when a later comer appropriated the name and format of an earlier competitor, even though there were no patent or trademark rights owned by the earlier user. The Court treated the action as an action for unfair competition and said:

"We are dealing more with the broader question of unfair competition where fairness, decency and common honesty are involved." 68 So.2d 577, 580.

These cases make it clear that in Florida a cause of action may exist where simulation of another's name or slogan causes damage on grounds entirely separate from actual confusion between competitors as to the source of the product. For the further proposition that the concept of competition with respect to the particular product need not exist to warrant actions of this kind, see Tampa Cigar Co., Inc. v. John Walker & Sons, 5 Cir., 222 F.2d 460 (an action brought for trademark infringement and also for unfair competition), and Pure Foods, Inc. v. Minute Maid Corp., 5 Cir., 214 F.2d 792, cert. denied 348 U.S. 888, 75 S.Ct. 208, 99 L.Ed. 697 (a Florida Lanham Act case).

■■ This Court has held in Creamette Co. v. Conlin, et al., 5 Cir., 191 F.2d 108, that "the law of that State [Florida] applicable to claims of and protection from unfair competition are to the same effect as those prevailing in American jurisprudence generally." Our research indicates that this is as true today as it was when that decision was written in 1951. We think, therefore, that the trial court properly construed the facts in this case as coming within the Restatement of the Law of Torts, Vol. III, Section 730, pp. 597, 598, Section 731, where it is stated:

"One's interest in a trade-mark or trade name came to be protected against simulation, * * * not only on competing goods, but on goods so related in the market to those on which the trade-mark or trade name is used that the good or ill repute of the one type of goods is likely to be visited upon the other. Thus one's interest in a trade-mark or trade name is protected against being subjected to the hazards of another's business."

■ We are aware of the fact that the Court should not be swayed by its instinctive reaction upon reading the record that this is a brazen and cheap effort by the defendant below to capitalize on the good will created by the tremendous expenditure in advertising by the plaintiff. This, of course, is not enough to warrant the grant of relief, but any conduct that is of such a nature as to fairly reek with unfairness and a callous indifference to the damage that might occur to others from the action taken by it will naturally be examined most carefully by a trial court and by an appellate court whose duty it is to determine whether such conduct falls afoul of any established legal principles. Finding, as we do, the liberal trend in the equity courts of the state of Florida, towards the protection of trade names and slogans from unfair attacks by others, we are not reluctant to conclude that what is here morally reprehensible is also legally impermissible. We conclude that the trial court was fully authorized in the entering of the final injunction against the continuing of such unfair practices by the appellant.

We next come to a consideration of the contention by the appellee that the trial court improperly excluded consideration of its right of recovery based on the Lanham Act. In view of our determination that the trial court had jurisdiction under 28 U.S.C.A. § 1332, by reason of diversity of citizenship, it may not be necessary for the Court to find jurisdiction under the Lanham Act. However, the appellee urges upon us its right to proceed under the provisions of the federal law.

■ The trial court found that since there had been no registration prior

to the commencement of the suit, and there had been a temporary restraining order until the date of the trial which prevented any infringement during that period of time, the registration acquired approximately a month before the trial on the merits on the temporary injunction, would not give rise to a cause of action under a federal statute. We think that, the suit having been amended to allege the registration under the Lanham Act, the complaint alleged sufficient threats and intentions on the part of the defendant to violate the very terms of the Lanham Act so as to constitute an allegation of sufficient facts upon which relief could have been granted by the trial court under that Act alone. An equity court, in considering injunctive relief, views the case as of the time of the granting of the relief. At that time there was ample proof that but for the temporary restraining order, the defendant would do the acts which would constitute a violation of the Lanham Act. We think, therefore, that the threat of infringement could be the basis of an injunction. Certainly it would not be necessary for the plaintiff, in such case, to wait until actual infringement had occurred before bringing the action to enjoin.

The appellant also complains of an order of the trial court enjoining the defendant from:

"Hereafter issuing any press release, having any interview for any kind of news media or publication, or otherwise giving any publicity to this law suit, or to the words 'Where there's life... there's Bugs,' or any words deceptively similar thereto."

Within the power of the trial court to enjoin an infringement, there necessarily resides the power to make such injunction effective to prevent any publication that itself infringes the plaintiff's trade name or trade slogan. We conclude that this injunctive order forbidding press releases publicizing the very slogan which the Court found to be an infringing one, falls within the com-

petence of the trial court. The inclusion of this part of the order, therefore, was not error.

The judgment of the trial court is Affirmed.