**GANT OF NEW HAVEN, INC., a corporation, Plaintiff,**

v.

**CHEZ BOYE PARFUMS INTERNATIONAL, INC., a corporation, and Sid S. Mack, Defendants.**

No. 65–354–Civ–J.

United States District Court
M. D. Florida,
Jacksonville Division.
April 27, 1966.

OPINION

McRAE, District Judge.

This Court has jurisdiction of this controversy, which is between citizens of different states and which involves a property right of an asserted value exceeding $10,000, exclusive of interest and costs. Seaboard Finance Co. v. Martin, 244 F.2d 329 (5th Cir. 1957); 1 Moore, Federal Practice 90.96 [2], at 870 (2d ed. 1960).

Gant of New Haven, Inc., is the sole seller to retailers of shirts known as Gant shirts, which are manufactured by plaintiff's affiliated corporations. Martin Gant and Elliott Gant, with their father Bernard Gantmacher, constituted the Gant family partnership to whose assets and goodwill plaintiff succeeded in 1958. Martin and Elliott are the sole stockholders of plaintiff corporation.

The distinguishing characteristics of Gant shirts were described by plaintiff's witnesses as being the traditional style, with natural cut and colors appealing to young men. The collar buttons in the back.

The Gant label has contributed significantly to the acceptability of Gant shirts by older boys and young men and, increasingly, by young women throughout the country. This acceptability and the market's identification of the name "Gant" with Gant shirts and with their makers have been painstakingly nurtured through the years by plaintiff, its affiliated corporations, by the Gant family partnership and by the members of the family.

The Gant name has been widely and continuously advertised a number of years in publications of national circulation, including The New Yorker and Esquire. The Gant name and Gant shirts have further been publicized by regular advertisements in college newspapers and in college football programs, which are read by the class of young men and women to whom the Gant advertising message is especially directed.

A great amount of money has been spent for the purpose of identifying the

Robert P. Smith, Jr., Bedell, Bedell, Dittmar & Smith, Jacksonville, Fla., William R. Liberman, New York City, for plaintiff.

Arnold B. Christen, Washington, D. C., Louis Safer, Safer & Safer, Jacksonville, Fla., for defendants.

name "Gant" with Gant shirts and with the makers and marketers of Gant shirts in the minds of young men and young women. Countless advertisements have appeared in newspapers and other publications of local and regional circulation. Gant retailers regularly receive advertising and in stock service booklets which not only describe the products that will be offered in the forthcoming seasons and the prices at which they will be available, but also describe the newspaper mats, photographs and radio scripts that are available to local Gant retailers. Local retailers are also advised of the projected program for national advertising, so that local advertising programs may be correlated with the national efforts. Martin Gant, plaintiff's president, testified that national advertising costs were $90,000 in 1961, $117,000 in 1962, $154,000 in 1963, $197,000 in 1964, and $302,000 in 1965. The national advertising budget for the Spring season of 1966 exceeds $115,000, not including Gant advertisements sponsored and paid for by local retailers. The national advertising budget has thus steadily increased in recent years.

To a large and identifiable class of the purchasing public, the name "Gant" means Gant shirts, made by plaintiff's affiliated corporations and marketed by plaintiff.

In 1964 and 1965, the defendant Sid S. Mack embarked on a plan to enter the rapidly expanding field of men's toiletries. An integral part of his plan was to arrogate to himself the goodwill associated with a trade-name recognizable in the market by older boys and young men to whom he wished to sell his line of toiletries. Mack knew that the name "Gant", as associated with Gant shirts, appealed to this particular market. He recognized the name "Gant" as a likely one for appropriation. In seeking a name for his product Mack also considered appropriating the recognized trade-name "London Fog" but abandoned that name when he discovered that "London Fog" was registered as a trade-mark in the United States Patent

Office. He also considered making use of such well known names as "Playboy", "Holiday", "Fontainebleau", "Gold Cup", and "Hilton".

Mack finally determined to appropriate plaintiff's trade-name when he confirmed the fact that the name "Gant" was not registered for use on toiletries in the United States Patent Office.

On April 13, 1965, Mack wrote a letter to Mat Shannon of Hart, Schaffner & Marx, New York City, seeking to induce Mr. Shannon to include advertisement of defendants' toiletries in the Hart, Schaffner & Marx Christmas catalogue which is distributed on a nationwide basis to H S & M dealers. Thinking either of appropriating the name "London Fog" or of appropriating the name "Gant", both of which he knew were established trade-names associated with articles of clothing bought by young adult customers, Mack wrote Mr. Shannon:

"Mr. Shannon, we have a product which is unusual in every respect. To begin with, it has a name that is recognized as having terrific appeal to the young adult set who, incidentally, purchases the major volume of colognes sold on the market today—as well as an advertising program that is tailored to the fraternity and college set—and practically guarantees a large sales volume to every store that has young adult customers."

During the summer of 1965 the defendants went into production of Gant toiletries. Upon being challenged by plaintiff and by plaintiff's affiliated corporations, Mack attempted to no avail to interest Martin Gant in marketing the Gant toiletries. Although Mack was expressly forbidden to use the Gant name, he continued to make use of it.

Defendants' use of the name "Gant" was intended to cause confusion in the market as to the source of the defendants' products. Defendants appropriated the name "Gant" for the purpose of leading a special class of consumers to believe that "Gant" toiletries were sponsored or marketed by, or otherwise as-

sociated with, Gant shirts and the makers of them.

The confusion which Mack deliberately set about to create has in fact been created. The probability of confusion has been increased by the adoption of advertising techniques which are designed further to identify "Gant" toiletries with Gant shirts and the makers thereof. For example, one of the defendants' advertisements in Playboy magazine admonishes readers to "Wear Gant". Another advertisement, published in an advertising journal in January 1966 expressed the defendants' gratitude to the industry for making 1965 "The biggest year in Gant's history!" At that time, Gant toiletries had been in production only one year.

Defendant Mack caused John Ossi, Mack's first and principal distributor of Gant toiletries, further to suggest relationships and associations between "Gant" toiletries and Gant shirts in his dealings with retailers. Inspired by Mr. Mack, Ossi made a point of seeking out men's stores in Jacksonville, Daytona Beach, Orlando and Gainesville which carried Gant shirts, and suggested to their managers that "Gant" toiletries and Gant shirts would "complement each other" in sales and market appeal.

These efforts of Mack have not been without result. The association of "Gant" toiletries with Gant shirts appeared to Rosenblum's and Wolf Brothers in Jacksonville to be a natural and appealing one, and so those retail stores purchased "Gant" toiletries and displayed the defendants' products prominently in their windows in the company of Gant shirts and advertising placards for Gant shirts, prepared and distributed by plaintiff or by an affiliated corporation. (The witness Robert Stephenson, an executive of Rosenblum's, testified that the sole reason he bought "Gant" toiletries was the name "Gant", which was associated with Gant shirts.)

Photographs were introduced in evidence showing, in these stores, the association of "Gant" toiletries with Gant shirts by displays of the two products in the same window.

Defendant Mack has a flair for misrepresentation. He named his corporation "DuPont Industries, Inc.", suggesting a non-existent connection with the duPonts of Delaware and of Jacksonville. He sought office space in the Florida National Bank Building, which is owned by the duPont Estate, for the apparent purpose of suggesting a further connection with the duPont interests. He sought to appropriate the name "London Fog" from a fine clothier. He distributed decals and streamers bearing a circled "R" symbol indicating that defendants had been granted registration of the name "Gant" for toiletries by the United States Patent Office, although this was untrue. Defendants' advertising and promotional literature suggest that the product is imported, which is not true, and that the corporate defendant's president is named "Henri d'Orly", which Mack admitted is not true but was used as a "desk name".

The law of Florida, which is applicable in this case, recognizes the existence of a property interest in goodwill associated with a name. See McGhan v. McGhan, 115 Fla. 414, 155 So. 653 (1934); 87 C.J.S. Trade-marks, Trades-names, and Unfair Competition § 89, at p. 318. The law applicable to this case affords protection by way of injunction in favor of a person who enjoys an established business identified with a name and who is damaged by the use by another of that name, in circumstances and according to principles set forth in Chemical Corp. of America v. Anheuser-Busch, Inc., 306 F.2d 433 (5th Cir. 1962), cert. denied, 372 U.S. 965, 83 S.Ct. 1089, 10 L.Ed.2d 129 (1963). It is necessary that plaintiff show that the natural and probable result of the conduct complained of is confusion in the relevant market as to the source of the defendants' products. Such a showing is sufficient, it not being necessary that actual deception and confusion be shown. 87 C.J.S. Trade-marks, Trade-names and Unfair Competition, § 92 at p. 325;

Crown Central Petroleum Corp. v. Standard Oil Co., 135 So.2d 26 (Fla.Dist. Ct. App. 1961).

■ This case is governed by the principles established in Chemical Corp. of America v. Anheuser-Busch, Inc., supra, in which the Court held that direct competition between plaintiff and defendant is not necessary in a case such as this and that the defendant's adaption of Budweiser's slogan, "Where there's life, there's Bud," for the purpose of selling defendant's insecticide constituted a wrong under the law of Florida. The Court held, 306 F.2d at p. 437:

> The gist of this action is that the plaintiff has a property interest in the slogan, built up at great expense, and that it and its products are favorably known as a result of its use of this property right and that the defendant, with full knowledge of the right and with the purpose of appropriating some of the value engendered in the minds of the public by its use has used, and proposes further to make use of, a deceptively similar slogan in a manner that will bring direct financial loss to the plaintiff, both by reason of confusing the source of the defendant's product, and by reason of the peculiarly unwholesome association of ideas when the word "bugs" was substituted in the slogan for the word "Bud", referring to a food product. * * *

> We think this view by the trial court is amply supported by the decisions of the Florida courts showing great concern for the rights of a person who after establishing a substantial market by an expensive advertising campaign and otherwise enjoying an established business identified with the name, slogan, or other attribute of good will, is then damaged by the use by another of his name or slogan.

An injunction will be entered herein, in accordance with the present opinion, permanently enjoining defendants from further appropriating the trade-name "Gant."

A further hearing will be set on the question of whether or not plaintiff is entitled to further relief.