**UNIVERSAL CITY STUDIOS, INC.,
and Merchandising Corporation of
America, Inc., Plaintiffs,**

v.

**CASEY & CASEY, INC., Defendants.**

No. 85–3505–Civ.

United States District Court,
S.D. Florida,
Miami Division.

Nov. 13, 1985.

William J. Gallwey, Shutts & Bowen, Miami, Fla., Evan L. Gordon, New York City, for plaintiffs.

Kenneth D. Stern, Harvey P. Schneider, Boca Raton, Fla., for defendants.

## ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

ARONOVITZ, District Judge.

THIS CAUSE came before the Court upon the plaintiffs' Motion for a Preliminary Injunction. The Court has received evidence, taken testimony, heard oral argument of counsel for the parties, reviewed the motion and supporting and opposing memoranda of law, and the affidavits submitted therewith, and being otherwise fully advised in the premises, it is

ORDERED and ADJUDGED, for reasons as are more fully set forth in the Court's Memorandum Opinion which follows, that the said motion be, and the same is, hereby DENIED.

## MEMORANDUM OPINION

The Court has before it the plaintiffs' Motion for a Preliminary Injunction. Heretofore, the Court held an evidentiary hearing on the afternoon of November 7, 1985 at which it received testimony from the plaintiffs, heard argument from counsel for all parties, and received exhibits from both plaintiffs and defendant. At the outset, the Court observes the following:

The burden of proof of establishing the four requisites for the issuance of a preliminary injunction rests on the plaintiffs. *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567 (5th Cir.1974). In the view of the Court, plaintiffs have not met that burden, as will be noted more fully hereafter.

## FINDINGS OF FACT

In support of its Order Denying the plaintiffs' Motion for a Preliminary Injunction, the Court enters the following Findings of Fact:

1. Plaintiff Universal City Studios, Inc., a Delaware corporation with principle place of business in California, is the producer of the television series "Miami Vice", and holds a copyright on said series. The program has enjoyed a high degree of success and attracts a large audience nationwide.

2. Plaintiff Merchandising Corporation of America, Inc., a California corporation and affiliate of plaintiff Universal, grants licenses to manufacturers and distributors of various products which authorize such licensees to utilize the "Miami Vice" logo, likenesses of the program's star actors, etc.

3. Plaintiff Universal has applied for a trademark for the series' logo, which consists of the words "Miami Vice" printed in stylized block letters with the word "Miami" above the word "Vice", and has like-

wise obtained a copyright on the television series "Miami Vice".

4. Defendant Casey & Casey, Inc. is a Florida corporation which manufactures clothing items, posters, and other novelty products. Since February 1985, the defendant has been producing and offering for sale a series of products featuring two cartoon figures under the caption "Miami Mice". (See Appendix A.) The defendant has applied for a trademark on its "Miami Mice" design (in June, 1985) one month after plaintiff Universal made application for a trademark protecting its "Miami Vice" logo.

5. Plaintiffs now market, or intend to market, various products bearing the trademark "Miami Vice" logo, including clothing, school supplies and posters. The production of "Miami Vice" tee-shirts and other licensed merchandise has not been accomplished on any large scale to date. As herein noted, there was a reasonable overlap in the periods during which each party began licensing and/or producing their respective products. It appears from the evidence presented at the hearing in this matter that the defendant began to manufacture and market its product before the plaintiffs' products were made available to the public. The plaintiff's copyright on the "Miami Vice" series, however, predates the defendant's initial manufacture of "Miami Mice" products. The plaintiffs have no plans at this time to produce, or to authorize the production of, a cartoon version of the television series "Miami Vice". Defendant Casey & Casey has never manufactured or sold any product bearing the "Miami Vice" logo.

6. The production elements evident to a viewer of plaintiff Universal's television series "Miami Vice" include the characteristic wardrobe adopted by the two leading characters, the predominate use of pastel colors in the set designs, and the pairing of an intrusive rock music soundtrack with the action scenes of each episode. Similarities in certain of these production details can be seen in a comparison of the "Miami

Vice" series with the graphic design of defendant's "Miami Mice" products.

7. Both plaintiffs and defendant have marketed and plan to continue marketing their respective products both in South Florida and in ther markets across the country.

### CONCLUSIONS OF LAW

Initially, the Court finds that it has jurisdiction over the subject matter of this action and personal jurisdiction over the parties pursuant to 15 U.S.C. § 1051, *et seq.*, and 28 U.S.C. §§ 1332, 1338.

■ Having made that determination, the Court moves to the question of whether a preliminary injunction should issue. The Court recognizes the established case law which holds that, in cases involving copyright or trademark infringement, a plaintiff is not held to the usual requirement of showing irreparable injury if a *prima facie* case of infringement is made out. As is discussed more fully hereafter, plaintiffs Universal City Studios, Inc. and Merchandising Corporation of America, Inc., having failed to make such a *prima facie* case, are held to the traditional requirements for obtaining preliminary injunctive relief, as stated in *Canal Authority of the State of Florida v. Callaway*, 489 F.2d 567 (5th Cir.1974). The four requisites noted in *Callaway* are:

1.) a substantial likelihood that plaintiff will prevail on the merits;

2.) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted;

3.) that the threatened injury to plaintiff outweighs the threatened harm that the injunction may do to the defendant;

4.) granting the preliminary injunction will not disserve the public interest.

1. Whatever rights flow to plaintiffs from their production and ownership of the television series "Miami Vice" and the licensing rights pertaining thereto predate the first manufacture by defendant of its "Miami Mice" products. While the Court does not conclude that the plaintiffs have asserted their rights in this matter in an untimely fashion, the Court notes that defendants began to pursue an interest in the marketing of its "Miami Mice" products at an earlier date than that at which plaintiffs initiated their own marketing program.

2. Considering that the plaintiffs bear the burden of proving the necessity of the issuance of a preliminary injunction, plaintiffs have failed to adduce sufficient evidence at this time to show that they are likely to succeed on the merits of their complaint, which alleges trademark infringement under both federal statutes and common law, and unfair competition.

■ 3. The test employed to determine whether a party has infringed either a registered trademark or one acquired by use alone is to ascertain whether the allegedly infringing use creates a "likelihood of confusion" in the minds of the consuming public such that potential purchasers are led to believe either that the infringing product is identical to the plaintiff's, or that the infringing product is sold with the authorization or consent of the plaintiff. *Warner Brothers Inc. v. Gay Toys*, 658 F.2d 76 (2nd Cir.1981); *Dallas Cowboys Cheerleaders v. Scoreboard Posters*, 600 F.2d 1184 (5th Cir.1979).

■ The Court, having examined all of the evidence produced at the evidentiary hearing held in this matter, concludes that while there exist some similarities between the cartoon figures depicted on defendant's products and the characters featured in the plaintiffs' television series, the degree of similarity between them is not sufficient to create a likelihood that consumers purchasing defendant's products would be misled to believe that the "Miami Mice" tee-shirts, posters, etc. are either produced by the plaintiffs or authorized by them. While plaintiffs did not introduce at the November 7, 1985 hearing any samples of their own officially licensed products, the testimony of the plaintiffs' witnesses in describing these products indicate that all of the plaintiffs' clothing items are adorned only by the words "Miami Vice" in the configuration identified as the "Miami Vice" logo.

They do not include illustrations of the leading characters of the program (although the plaintiffs stationary products, such as posters and notebooks, do apparently feature a photograph of stars Don Johnson and/or Philip Michael Thomas). The defendant's products, on the other hand, feature a cartoon depiction of two mouse-like figures, attired in casual dress clothing similar to the fashions favored by the two leading characters in the "Miami Vice" series. Above the heads of these figures appear the words "Miami Mice" in block letters, with the words "Miami" and "Mice" printed side-by-side. There is not sufficient similarity between the defendant's product and the plaintiffs' "Miami Vice" series and related products to warrant this Court in finding that the plaintiffs are likely to succeed in their trademark infringement claim.

■ 4. The word "Miami" is not a proprietary term, either when used in conjunction with the word "Vice" or in connection with any other element of the plaintiffs' television series.

5. For the above reasons, the Court concludes that plaintiffs have failed to make a *prima facie* showing that defendant Casey & Casey, Inc. has infringed their trademark rights in the "Miami Vice" series or logo under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), or under a theory of common law trademark infringement.

6. Although the plaintiffs' complaint alleges the infringement of property rights protected under copyright and trademark law as well as unfair competition, their motion for injunctive relief recites only trademark and unfair competition grounds. The memorandum of law in support of this motion likewise emphasizes the trademark and unfair competition allegations while omitting discussion of possible copyright infringment. However, at the evidentiary hearing on plaintiff's motion, counsel for plaintiffs raised the issue of alleged copyright infringement as a basis for injunctive relief. Accordingly, the Court addresses this ground for relief along with the aforementioned stated grounds.

■ In order to establish a likelihood of success on the merits in a claim for copyright infringment, the plaintiff must show that it owns a copyright on the work at issue, and that the copyrighted work as been copied by the defendant for its own use. *Sid & Marty Kroft Television Productions, Inc. v. McDonalds Corporation,* 562 F.2d 1157, 1162 (9th Cir.1977). Copying is demonstrated by: 1.) circumstantial evidence of access by the defendant; and, 2.) a substantial similarity between the copyrighted work and the defendant's work. *Id.* On the basis of the record before the Court at this time, the plaintiffs have not made out a *prima facie* case of copyright infringement.

In *Warner Brothers v. American Broadcasting Companies,* 720 F.2d 231 (2nd Cir.1983), the Second Circuit considered a copyright infringement claim that was, like the instant case, the alleged appropriation of a fictional character along with the "style" of the plaintiff's motion picture. In this case, the copyrighted character was Superman; the alleged infringer, Ralph Hinkley, the fictional leading character of defendant's television series "The Greatest American Hero". While the Court noted a considerable list of similarities between the characters (attire, supernatural powers, even identical phrases), it held that they were not substantially similar, mainly because the Hinkley character was essentially humorous in nature and tone, in contrast to the ever-serious demeanor of the original Man of Steel.

In the instant case, it is clear through even a casual comparison of the defendant's fanciful "Miami Mice" with the serious dramatic characters portrayed in the plaintiffs' series by actors Don Johnson and Philip Michael Thomas that there is no "substantial similarity" present here. The extensive testimony adduced at the evidentiary hearing concerning the subject of plaintiffs' copyright reveals that the copyrighted elements of the television series are not minutely reflected in defendant's products. The "mice" are obviously comical figures, while the "Vice" officers of the

television series are portrayed and promoted by plaintiffs as the embodiment of style, courage and determination. The cartoon illustrations clearly differ from the image and characters portrayed in plaintiffs' television series. "Miami Vice", as plaintiffs' witnesses testified, features an "adult theme"—crime, violence and sophisticated dialogue. The comical nature of the "Miami Mice" figures, in contrast, will likely appeal to a younger audience.

7. The plaintiffs' claim that the defendant's conduct constitutes unfair competition has likewise not been shown to be likely of success on its merits. The cases construing the common law of Florida regarding the tort of unfair competition invariably focus both on the "likelihood of confusion" test applied in trademark infringement cases and on the risk of harm to the plaintiff's business which results from the defendant's unfair conduct. *Chemical Corporation of America v. Anheuser-Bush, Inc.,* 306 F.2d 433 (5th Cir. 1962); *Tampa Cigar Company, Inc. v. John Walker & Sons,* 222 F.2d 460 (5th Cir.1955); *Sentco v. McCulloh,* 68 So.2d 577 (Fla.1953). No testimony was adduced at the hearing in this matter which would tend to show that the plaintiffs' reputation, or the esteem in which the "Miami Vice" series is held by viewers, would be harmed or disparaged by the defendant's conduct. On the contrary, one of the plaintiff's witnesses stated that the industry ratings, which measure the number of viewers enjoyed by each series episode, has actually been on the increase during the period in which defendant has been marketing the "Miami Mice" products.

8. The plaintiffs have failed to show that irreparable harm will result to them upon the Court's denial of their motion for injunctive relied. While the plaintiffs did adduce testimony indicating that certain of their licensees had expressed concern about actual or potential losses of proceeds occasioned by the activities of the defendant, such harm, if proven, can fairly be remedied by an award of money damages after complete adjudication of the plaintiff's claims. No monetary calculations were presented at the hearing on this motion which would tend to show the existence or extent of irreparable harm to plaintiffs traceable to the defendant's conduct. Such speculative harms do not satisfy the second requirement of *Canal Authority, supra,* that "irreparable harm" be shown.

9. In concluding that the plaintiffs do not stand to suffer any irreparable harm as a result of the Court's denial of their motion, we conclude at the same time, under the third requirement of *Canal Authority, supra,* that the defendant would himself suffer such irreparable harm were the Court to grant the relief sought by plaintiffs. The plaintiff's complaint was filed in this Court on November 4, barely six weeks before the Christmas and Hannukah holidays with their attendant increase in retail sales activity. An injunction forbidding the defendant to market his inventory during this crucial period would impose an enormous hardship upon it. Thus, this factor militates strongly against the granting of injunctive relief at this point.

10. The last of the *Canal Authority* factors, whether the granting of an injunction would disserve the public interest, does not weigh heavily in favor of either the plaintiffs or the defendant. The public's ability to purchase a novelty item in time for holiday gift-giving may be accorded some value, but, had the plaintiffs been able to make a stronger showing of their likelihood to succeed on the merits or the threat of irreparable harm, this factor would not prevent the Court from imposing the desired preliminary injunction.

The foregoing conclusions of law are made and entered in support of a finding that, based on the record before the Court at this time, the plaintiffs have not established the requirements for the issuance of a preliminary injunction as set forth in *Canal Authority of the State of Florida,* 489 F.2d 567, 572 (5th Cir.1974).

This ruling is based solely upon the record before the Court at this time. This is not to say that after a trial, following full and complete discovery, and when all

issues have been developed and heard, that the determination of the Court cannot be different. This Court must rule on the basis of the record presented before it, and this ruling is the result thereof. Thereupon, it is

ORDERED and ADJUDGED that the plaintiffs' Motion for a Preliminary Injunction is hereby DENIED. Plaintiffs' Motion for a Temporary Restraining Order was previously denied by this Court without a hearing thereon.

### APPENDIX A