**WEBB'S CITY, Incorporated, Appellant,**

v.

**BELL BAKERIES, Inc., Appellee.**

No. 15472.

United States Court of Appeals Fifth Circuit.

Nov. 9, 1955.

William S. Fielding, St. Petersburg, Fla., for appellant.

Baya M. Harrison, Jr., St. Petersburg, Fla., Mann, Harrison, Stone, Roney & Mann, St. Petersburg, Fla., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and TUTTLE and BROWN, Circuit Judges.

TUTTLE, Circuit Judge.

This appeal presents the question of whether, under Florida law, one whose unregistered trade name has acquired a distinctive meaning in the minds of the buying public is entitled to the exclusive use of that name, or whether he has a cause of action only where a competitor so names, packages, or promotes his own product as to create a substantial likelihood of confusion between the two products in the mind of the ordinary purchaser.

For fourteen years prior to the bringing of this action, Webb's City, Inc., a large department store in St. Petersburg, Florida, sold its own bread to the public, under the trade name "Dandy." Although the markings of the wrapper were changed from time to time, the trade name remained constant. Webb's City spent thousands of dollars yearly in advertising its product, both over the radio and, at least three times weekly, in the newspapers. As a result of these promotional activities—the trial court found—the name "Dandy," in reference to bread sold in the plaintiff's store, acquired a distinctive, secondary meaning in the minds of the buying public of St. Petersburg.

On October 18, 1953, the defendant for the first time offered "Dandee" bread for sale in St. Petersburg, accompanying its introduction with advertising and other promotional measures. For several months prior to this time, the defendant had sold "Dandee" bread in North Carolina, Michigan and Illinois. On October 26, 1953, Webb's City brought suit in Florida state court for an injunction, alleging unfair competition, in the selling of "Dandee" bread in St. Petersburg. Thereafter the defendant removed the case to the District Court for the Southern District of Florida, on the ground of diversity. The case was there heard without a jury, and the trial court made findings of fact and conclusions of law, the former being substantially accepted and the latter challenged on this appeal.

The trial court found that "Dandy" bread is sold exclusively in the plaintiff's department store, while "Dandee" bread is not offered for sale there. It also found that the wrappers are substantially different. "Dandee" bread has thus far been packaged in a wrapper which has a yellow background, with the word "Dandee" most prominent thereon, in red script, and "Enriched Bread" in brown letters underneath. There also appears on the wrapper the representation of a sliced loaf of bread, in natural brown and white colors. "Dandy" bread has been sold in wrappers which apparently have always been similar in design, although different in color. The two wrappers which are attached to the record on appeal are respectively red, white and black, and orange, white and brown. In each the word "Dandy" is written most prominently, in script, and the tail of the "Y" in that word is continued underneath the word so as to underline it, with the word "Sliced" superimposed in another color across this part of the letter. Beneath this appear the words "White Enriched Bread" on one wrapper, and "White Bread" on the other, on a circular colored background. The name of the manufacturer appears clearly on the wrappers of both "Dandee" and "Dandy" bread.

The trial court found that "Dandy" bread sells for about 11 cents to 12½ cents per 14-ounce loaf, while "Dandee" bread retails for approximately 18 cents per 15-ounce loaf. It also found that "[t]he defendant's bread is said to be of better quality than that of the plaintiff." The trial court further found that the plaintiff's sales had actually increased since the introduction of "Dandee" bread, compared with a like period of time before "Dandee" bread appeared on the St. Petersburg market; that there was no showing of any actual damage, or any evidence of customer confusion between the two since "Dandee" bread has appeared in St. Petersburg; and that.

"the defendant introduced certain evidence that no confusion would occur." It accordingly granted judgment for the defendant.

The plaintiff argues that it is not required to show any actual instances of customer confusion in order to establish a right to injunctive relief here. It contends that to prove a cause of action, it has only to establish that the name "Dandy" has acquired a distinctive, secondary meaning in the minds of the buying public of St. Petersburg, and that there is a similarity between "Dandy" and "Dandee." Under this theory, customer confusion is only an element of damage, and, for the purposes of securing injunctive relief in such a case, "injury will be presumed."

■■■ We cannot agree with this reasoning. Under the law of Florida, as under the common law of most states, customer confusion is the gist of the actionable wrong. The common law does not give anyone the exclusive use of a trade name, even where that name is distinctively associated by the public with his product. The prior user has a remedy in the Courts only where a competitor so disguises his product, by means of its name or package, or so promotes it, by any type or combination of advertising schemes, as to lead the casual buyer to purchase the imitation because he believes it to be the original.

The appellant cites a number of cases where the element of customer confusion is little discussed. There is no conflict between those authorities and the holding of the trial court below. The cases generally fall into two classes. In one, customer confusion is proved.[1] In the other, the likelihood of confusion is so great that it is presumed, as a matter of law.[2] Here the fact and the likelihood of customer confusion were not only not proved by the plaintiff; they were disproved by the defendant. What the plaintiff would have us do here, therefore, is make a finding as a matter of

law, contrary to what has already been found below, as a matter of fact.

The cases on which the plaintiff relies do not set forth anything to support such a view of the law. Thus, in Quality Courts United, Inc., v. Jones, 59 So.2d 20, the Supreme Court of Florida affirmed a final decree enjoining the defendants from using any descriptive words, with regard to their motor court, which would cause any substantial portion of the public to believe that it was associated with the plaintiff Quality Courts United, Inc. It reversed an explanatory decree, entered after the final decree, which allowed the defendants to use the phrase "A Court with Quality," provided that "quality" was in no way emphasized. In reversing the explanatory decree, the court said:

> "In this holding we do not mean to infer that plaintiff has acquired a copyright on the word 'quality' vesting it with the exclusive use of that term. * * * [But] * * * When a motor court has become known by a distinctive slogan or emblem, other operators should not be permitted to appropriate it or any semblance of it that will confuse the public." 59 So.2d 20, 23.

In Florida Ventilated Awning Co. v. Dickson, 67 So.2d 215, the Supreme Court of Florida affirmed a chancellor's decree enjoining the defendants from using the plaintiff's name or any other promotional feature that would convey the impression that there was any relationship between their product and the plaintiff's. The defendants there had not only appropriated the plaintiff's name, "but employed its catchwords, features, formats, checklists, phrases, and other indicia to advertise and place its product before the public." 67 So.2d 215, 217. Under those circumstances, it was clearly necessary to enjoin the defendants from using the plaintiff's name any longer, in order to disassociate the two products which had theretofore been confused in

---

1. See, e.g., Pure Foods v. Minute Maid Corp., 5 Cir., 214 F.2d 792.

2. See, e.g., El Modelo Cigar Mfg. Co. v. Gato, 25 Fla. 886, 7 So. 23, 6 L.R.A. 823.

the public's mind, and thus correct the mischief that had already been done.[3]

In Sentco, Inc. v. McCulloh, Fla., 68 So.2d 577, there was deliberate imitation in the packaging of the defendant's product, and in its promotional campaign. The Supreme Court of Florida held that the chancellor, having found facts showing this, could not conclude that there had been no confusion, when the only difference shown was the difference between the plaintiff's trade name, Vap-O-Lite, and the defendant's trade name, Exterm-O-Lite.

If plaintiff's contention here, that customer confusion is irrelevant, is to be accepted, we must hold that any persons appropriating plaintiff's name "Dandy" for their products must be enjoined therefrom, as converters of its good will to their own use. This contention was rejected in Creamette Co. v. Conlin, 5 Cir., 191 F.2d 108, wherein was involved the plaintiff's macaroni "creamettes" and the defendant's "Creamette" ice cream. This court affirmed a judgment for the defendant, saying that "[i]t is not shown that there has been any confusion as to the source of the products in question, nor was any evidence introduced to support the view that there was likely to be any such confusion." 191 F. 2d 108, 111.

■ Although the products there were different and the products here are the same, the gravamen of the tort in all cases is customer confusion, and this having been affirmatively disproved, there was no actionable wrong shown. The trial court was therefore correct in declining to grant injunctive relief.

The judgment is

Affirmed.

---

3. In Chappell v. Goltsman, 5 Cir., 197 F. 2d 837, this Court affirmed a judgment for the defendants in a case where both used the trade name "Bama," but the trial court had found that no substantial confusion had resulted. We ruled, however, "that, in the interest of making assurance doubly sure that no con- fusion resulting in injury to plaintiffs will occur from the use of the name 'Bama', the judgment should be modified by adding a requirement that defendants strike from their labels, wherever it appears, and cease and desist from the use of, the word 'Brand'." 197 F.2d 837, 839.