120 So.2d 39 (1960)
STAGG SHOP OF MIAMI, INC., a Florida Corporation, and Stagg Shop of Coral Gables, Inc., a Florida Corporation, Appellants,
v.
Albert MOSS and Maurice Moss, a Co-Partnership d/b/a Stagg, Ltd., Appellees.
No. 1574.
District Court of Appeal of Florida. Second District.
April 29, 1960.
Rehearing Denied May 13, 1960.
*40 Sidney M. Dubbin, West Palm Beach, and Katzentine & Heckerling, Miami, for appellants.
Jack Ackerman, West Palm Beach, for appellees.
ALLEN, Chief Judge.
The appellant, as plaintiff in the lower court, brought an action for a temporary injunction, an accounting of profits and a permanent injunction against the appellee-defendants to enjoin them from using the name "Stagg" in defendant's business. The temporary injunction was denied and, after a final hearing, plaintiff's complaint was dismissed with costs taxed against it. After plaintiff's petition for rehearing was denied, this appeal was filed.
William and Martha Cohen opened a men's clothing business in Coral Gables in February, 1949, under the name of "Stagg Shop." After the business prospered they incorporated their business on December 3, 1956, as "Stagg Shop of Miami, Inc.," a Florida corporation. The name of this corporation was subsequently changed to "Stagg Shop of Miami Beach, Inc.," with William Cohen as its president and Martha Cohen as its secretary.
On April 2, 1957, the Cohens formed another corporation under the name of "Stagg Shop of Coral Gables, Inc.," with William Cohen as president and Martha Cohen as secretary.
On December 31, 1958, Albert Moss registered the name "Stagg Ltd." with the Secretary of State as a trade-mark. "Stagg Ltd." is also a men's clothing store but is located in West Palm Beach. The Cohens demanded that the defendants discontinue the use of the name "Stagg," but after defendants refused this request, plaintiffs filed the instant suit.
The plaintiffs contend that they are not required to show any actual instances of direct competition or customer confusion in order to establish a right to injunctive relief; but that they need only show a possibility of close competition in the future to entitle them to the requested relief. Such contentions are untenable under the applicable principles of law of this State.
Under Florida law, as under the common law of most states, customer confusion is the gist of the actionable wrong. The rule of the early common law was to the effect that there must be shown actual or direct competition between the litigants as an essential prerequisite to relief in an action for infringement of a trade-mark or trade name. It has been held in several cases that there cannot be unfair competition unless there be, in fact, competition; that generically the term "unfair competition" presupposes a real competition, present or prospective, of some kind; and that to invoke equitable relief the plaintiff must show that there is a competition. Annotation 148 A.L.R. 12, 19. The Florida Supreme Court, in Sun Coast, Inc. v. Shupe, Fla. 1951, 52 So.2d 805, held that to justify enjoining the use of a trade name, circumstances must be such that it appears that the business of the first user will suffer from deceptive use, or that by reason of unfair competition there will be an imposition on the public.
The common law does not give anyone the exclusive use of a trade name, even where that name is distinctively associated by the public with his product. Webb's City, Inc. v. Bell Bakeries, 5 Cir., 1955, 226 F.2d 700. Irrespective of this principle, rival manufacturers or tradesmen have no right, however, to beguile prospective purchasers into buying their wares under the impression they are buying those of their rivals by the use of imitative devices or other unfair means. It is the injury to a competitor caused by such deceptive and fraudulent conduct that is the ground upon which courts of equity act in granting relief. Therefore, if one businessman resorts to the use of any artifice or contrivance for the purpose of representing *41 his goods or his business as the goods or business of a rival tradesman, thereby deceiving the public by causing them to trade with him when they intended to trade, and would have otherwise traded, with his rival, he may be restrained by injunction from pursuing such a course of conduct; such relief being afforded on the ground that an action at law for damages is not a sufficiently satisfactory remedy. Webb's City, Inc. v. Bell Bakeries, supra.
The appellants contend that notwithstanding their argument that customer confusion is not a prerequisite to the right to relief, the testimony adduced in the lower court amply supports that customer confusion has, in fact, resulted from the defendants' acts and, in support of this contention, the testimony of Judith Elaine Callahan is cited by the appellants. Miss Callahan stated on deposition that she is a student at the University of Miami; that she and another student purchased merchandise at plaintiffs' shops in Miami; that while at home in West Palm Beach she went into defendants' shop thinking it had some connection with plaintiffs' shops in Miami, and purchased merchandise; but that no one in defendants' shop represented that it was connected in any way with plaintiffs' shops in Miami. On cross-examination Miss Callahan stated:
"Q. Realizing that you have been called as a witness for the plaintiff, or the Stagg Shop, the only thing that I am going to ask you to be on this particular question is as honest as you possibly can and consider the question the best you possibly can. A. All right.
"Q. Would you have purchased any merchandise at that store on Worth Avenue if you had not known about the Stagg Shop in Coral Gables? A. Well, if I liked the merchandise, I believe I would have.
"Q. You did state that you were satisfied with the merchandise that you did purchase? A. Yes.
"Q. Would you say, therefore, that you made the purchase primarily because of liking the merchandise yourself, rather than the fact that the word `Stagg' was on it?
"Mr. Heckerling: We have already had an objection on that question, but let the record show an objection.
"The witness: Did I purchase the merchandise because of the name or because of the merchandise; is that what you mean?
"Q. (By Mr. Ackerman) That's right. A. I liked the merchandise so I imagine I did it because of just what the merchandise was."
One of the defendants, Maurice Moss, testified that he had operated stores in West Palm Beach for 20 years; that he still owns and operates "Waltons" which is near to the newly opened "Stagg Ltd."; that merchandise and customers are sent back and forth between these stores owned by defendants; that 90% of the "Stagg Ltd." business is tourist buying; and that little, if any, of his business comes from the Miami area. It was also brought out during the proceedings that there are "Stagg" shops in Jacksonville, New Orleans, Daytona Beach, Detroit and Charlotte. Defendant Moss stated that aside from the expense of selecting a new name he did not attach any significance to the name Stagg and that it was the merchandise and not the name that makes sales.
William Cohen, one of the plaintiffs, testified that although his shops were located in the Miami area, approximately 20% of his business comes from response to his mailing list customers who live in other cities in Florida. There was no testimony, however, of what effect, if any, on plaintiffs' sales that the operation of defendants' shop had caused nor was any testimony adduced showing that the defendants had appropriated any of plaintiffs' business to the injury of plaintiffs or their business.
*42 Aside from Miss Callahan's testimony, there was no showing that plaintiffs' customers in West Palm Beach or anywhere else had been misled by the defendants' shop, nor that plaintiffs' market extended to the West Palm Beach area. Normally, where one business adopts the name of another business already in existence, but uses it in a place and with distinguishing characteristics which render it improbable that injury could thereby result to the original business, such use of the name will not be enjoined, in the absence of proof that injury has actually resulted therefrom. See Annotation 66 A.L.R. 948, supplemented in Annotation 115 A.L.R. 1241. Moreover, the writer of the text in 87 C.J.S. Trade-Marks, Etc. § 109 cites ample authorities for the principle that in the absence of bad faith or conduct calculated to defraud the public, the right to a trade name in which a business is conducted is usually of only local extent, and the name will be protected against use by others only in the locality where the business is conducted and the name is known, the right being coextensive with, and limited to, plaintiffs' market
After hearing the testimony and examining the exhibits, the lower court entered a final order of dismissal which provided in part:
"This is a suit for injunction to enjoin defendant in the use of the name `Stagg, Ltd.' Plaintiffs operate stores in Coral Gables and Miami Beach where men's clothing is sold. Defendant operates his store in Palm Beach where like merchandise is sold. There is no evidence that customers in Palm Beach trade with plaintiffs' stores either in Miami Beach or Coral Gables and there is no evidence that customers in Miami Beach and Coral Gables trade with defendant in Palm Beach. There is no evidence that the similarity in names has caused any confusion among customers of the stores. Under the circumstances the Court is unable to say that the defendant is engaging in unlawful competition. * * *"
This court, on the record presented, agrees with the findings of the able chancellor and on the basis that the plaintiffs failed to establish the essential prerequisites to the requested relief as set forth in this opinion, the judgment of the lower court is affirmed.
Affirmed.
KANNER and SHANNON, JJ., concur.