**SUN–MAID RAISIN GROWERS OF CALIFORNIA, Plaintiff,**

v.

**SUNAID FOOD PRODUCTS, INC., Defendant.**

**No. 63–567–Civ–EC.**

United States District Court
S. D. Florida,
Miami Division.

July 30, 1964.

Scott McCarthy Preston & Steel, of Miami, Fla., for defendant.

Boyken, Mohler & Foster, Dirks B. Foster, San Francisco, Cal., and John Cyril Malloy, Miami, Fla., for plaintiff.

## OPINION

McRAE, District Judge.

This is a civil action arising under the trademark laws of the United States for infringement of a trademark registered in the United States Patent Office. Plaintiff claims that Defendant has violated the provisions of 15 U.S.C. §§ 1051–1127. The specific section of the Code which is before the Court for application is Section 1114. Jurisdiction is conferred on this Court by 28 U.S.C. § 1338.

The Complaint further alleges facts to support jurisdiction upon the ground that there is diversity of citizenship, with the requisite jurisdictional amount. The Court treats these allegations as surplusage.

The parties filed an extensive Pre-Trial Stipulation, to which reference is made. Although this Stipulation will not be repeated in the present opinion, use will be made of certain facts to be found in such Stipulation.

Plaintiff is a corporation organized and existing under the laws of the State of California, with its principal place of business in Fresno, California. It is an agricultural cooperative comprised of numerous raisin growers in that area of California. Since as early as 1915, and continuously up to the present time, Plaintiff and its predecessors have been engaged in the business of packing and marketing raisins. Its raisins are sold extensively throughout the United States and in foreign countries.

Defendant is a corporation organized under the laws of the State of Florida, with its principal place of business in Miami, Florida. Defendant was organized in 1948, and has continuously used the name "Sunaid" as a brand name

for an extensive variety of jellies, jams, fruit juices and fruit products. Defendant has never produced or sold raisins. The only instance in which Defendant sells any raisins or raisin products is in the sale of its conserves. In the production of these conserves, Defendant uses fifteen pounds of raisins to each batch of five hundred pounds of conserves.

In the course of the trial, it was vigorously urged by Plaintiff that the trade name "Sun-Maid" was used on a variety of food and drink products other than raisins. On cross-examination by Defendant of Plaintiff's witness, Lee W. Halverstadt, Secretary-Treasurer of Plaintiff, it was established, however, that the sales of all products other than raisins were made solely for the purpose of carrying out a "trademark maintenance program". In other words, Plaintiff follows an established program whereby it records small annual or semiannual interstate shipments of several raisin products, such as raisin juice, raisin seed salad oil, mincemeat, raisin pie filling, raisin soda and raisin jam, for the sole purpose of protecting the "Sun-Maid" trademark on these products. The question of Plaintiff's exclusive right to produce and distribute these products is not an issue in this case. Defendant does not market any of these products. It is Plaintiff's contention that the shipment of these products shows direct competition in the market of jams and food drinks produced by Defendant. This contention is unfounded. The evidence clearly shows that Plaintiff's "trademark maintenance program" simply involved the shipment of only six to twelve bottles of each of these products to a friendly customer on either an annual or semiannual basis. No one of these products was in fact produced by Sun-Maid; all of them were produced for Sun-Maid by unidentified manufacturers. These products were labeled with plain black on white labels as contrasted with the multicolored label on Plaintiff's commercial products. The witness Halverstadt was unable to state whether or not Sun-Maid received payment for any of these shipments. This clearly does not constitute competition in any sense of the word.

On cross-examination Carlis H. Neafus, General Sales and Advertising Manager of Sun-Maid for the past fourteen years, testified that, disregarding these nominal shipments, the *only* product sold by Sun-Maid since 1948 is *raisins*. The raisins produced by Plaintiff are packaged either in cardboard containers or cellophane sacks. The products produced, distributed and sold by Defendant are packaged in cans or jars. Clearly, a housewife would not mistakenly purchase Defendant's "Sunaid" products in lieu of Plaintiff's "Sun-Maid" raisins.

The Court therefore turns to the question of whether the Defendant's use of the trade name "Sunaid" on its jams and fruit drinks was an infringement of Plaintiff's trademark "Sun-Maid" as used in the sale of raisins.

A prominent part of Plaintiff's trademark shows an attractive, smiling girl holding a large tray of grapes, with a sunburst in the background. Below the picture of the girl is the name "SUN-MAID" and at the bottom of the package appears the word "RAISINS". Between the phrase "SUN-MAID" and the word "RAISINS" appears the variety of raisins which is contained in the package, including "Seedless", "Golden Seedless", "Puffed Seeded Muscats", and "Seedless Nectars". Plaintiff produces likewise "Zante CURRANTS". The Court takes judicial notice of the fact that a "currant" is simply a small seedless raisin.

The lettering used by Plaintiff on its packages, with almost unbroken regularity, is of a distinctive block style. Only one exhibit was introduced in evidence of a script style and this lettering was used on an address label. On the other hand, for a good many years Defendant has uniformly used a script type label with a sweeping "S", which bears no similarity in appearance to the label used by Plaintiff. Furthermore, the picture displayed on "Sun-Maid" raisins is uniformly the picture of the girl as above described. The picture displayed on the "Sunaid" products is almost uniformly

the picture of the product in the container; for example, the label on a bottle of grape juice would show a glass of grape juice. Defendant has never used the picture of a woman or girl in connection with its packaging. The Court concludes that the appearance of the labels used by Plaintiff and Defendant are so widely different that there would be no likelihood of confusion or mistake.

Although the names "Sun-Maid" and "Sunaid" are similar in sound, they are derivatively different. It was testified by the President of Sunaid Food Products that the name "Sunaid" was chosen because Florida is known as the land of sunshine and Defendant's original products were made from Florida fruit. It seemed reasonable, therefore, to suggest in the trade name that the food products produced in Florida were aided by the sun. On the other hand, the name "Sun-Maid" has a different literal meaning and is directly associated with the attractive maid who appears on the package.

There is no evidence in the record to show intent on the part of the Defendant to deceive or confuse anyone as to the origin of its food and drink products. Surely it cannot be said that Defendant's trademark was an imitative device, artifice, or a contrivance which was devised to induce a buyer to purchase Defendant's products in the belief that the product was produced by Plaintiff.

No proof was offered by Plaintiff of consumer confusion. One witness testified that an unidentified Boy Scout at the recent Boy Scout Jamboree in Philadelphia had consumed a small individual container of "Sunaid" jelly and had told the witness that he thought the jelly was made by Sun-Maid. The Court can attach no weight to such frivolous testimony. There was also introduced in evidence the deposition of Norman William Lewis, taken in the Colony of British Honduras, in which the deponent stated that he was purchasing agent for the grocery department of a retail and wholesale grocery company doing business in that Colony. He stated that on one occasion a mistake had arisen between Sun-Maid and Sunaid in placing an order, but, taking the deposition as a whole, it falls far short of indicating either confusion or the likelihood of confusion between raisins as produced by Plaintiff and the various other food products as produced by Defendant.

The Court concludes that Plaintiff has failed in its proof to offer any significant testimony of confusion, or the likelihood of confusion, or of mistake or the likelihood of mistake, arising by virtue of the use by Defendant of the brand name "Sunaid".

The essence of Plaintiff's argument rests upon the position that it will be harmed if Defendant markets an inferior product which would diminish the value of Plaintiff's "Sun-Maid" trade name. In the absence of any showing of actual confusion or the likelihood of confusion of "Sunaid" products with the "Sun-Maid" trade name, the Plaintiff has not been injured. Based upon the facts which the Court has previously examined, there is no unfair competition deriving from the use of trade names which are used by Plaintiff and Defendant.

Section 729 of the Restatement of the Law of Torts, in setting forth the factors generally important in determining the issue of confusing similarity, confirms the conclusions reached by this Court. These factors are:

(a) *Similarity of appearance.* There is no similarity in appearance between the trademarks used in the present case.

(b) *Similarity in pronunciation.* Although there is some similarity in pronunciation, it cannot be said that the trademarks involved in this case are *idem sonans.* The literal meanings of the two trademarks are manifestly different.

(c) *Verbal translation of pictures.* There is no similarity in the verbal translation of pictures used in the present trademarks.

(d) *Similarity in suggestion.* There is no similarity in suggestion between

the two trademarks involved in the present case.

(e) *Intent of the Defendant.* The record is devoid of evidence showing an intent on the part of the Defendant to cause confusion, to cause mistake, or to deceive.

(f) *Relation in use and manner of marketing.* The products sold by Plaintiff differ in kind and in character from the products produced and sold by Defendant.

(g) *The degree of care likely to be exercised by purchasers.* Most foodstuffs are bought by housewives, but it is improbable that a housewife would be so confused in making her purchase that she would buy one of the various products produced by Defendant simply because she thought it was produced by Plaintiff.

The problems raised in the present case have been considered by the appellate courts of Florida and by the Fifth Circuit Court of Appeals. These cases appear to be controlling in the disposition of the present case. In Stagg Shop of Miami Inc. v. Moss, 120 So.2d 39 (1960), it was held that where one business adopts the name used by another business already in existence, but uses the name in a place and under distinguishing characteristics which make it unlikely that injury could result to the original business, the use of the name will not be enjoined in the absence of proof that injury has actually resulted therefrom.

Webb's City Inc. v. Bell Bakeries, 226 F.2d 700 (C.A. 5, 1955), laid down the principles which this Court regards as being controlling in the present case. For fourteen years before the bringing of the suit, Webb's City was the producer of a brand of bread sold under the trade name "Dandy". This bread was extensively advertised. Defendant began the production of a bread, which was sold in the same geographical area, under the name of "Dandee" bread. The Fifth Circuit affirmed the judgment rendered by the District Court for Defendant, and in so doing stated, per Tuttle, J.:

"Under the law of Florida, as under the common law of most states, customer confusion is the gist of the actionable wrong. The common law does not give anyone the exclusive use of a trade name, even where that name is distinctively associated by the public with his product. The prior user has a remedy in the Courts only where a competitor so disguises his product, by means of its name or package, or so promotes it, by any type or combination of advertising schemes, as to lead the casual buyer to purchase the imitation because he believes it to be the original."

See also Chemical Corp. of America v. Anhaeuser-Busch, Inc., 306 F.2d 433 (C.A. 5, 1962), and Sunbeam Furniture Corp. v. Sunbeam Corp., 191 F.2d 141 (C.A. 9, 1951).

Defendant has also urged in the case before the Court that Plaintiff is barred from relief on the grounds of laches and such acquiescence as amounts to an estoppel. In support of these defenses, Ambrosia Chocolate Co. v. Ambrosia Cake Bakery, Inc., 165 F.2d 693 (C.A. 4, 1947), cert. denied 333 U.S. 882, 68 S.Ct. 914, 92 L.Ed. 1157 (1948), was cited. The Court notes that Plaintiff knew or should have had knowledge of the use by Defendant of the trade name "Sunaid" for a period of at least six years. Defendant purchased "Sun-Maid" raisins for use in the production of its conserves. These purchases have been made regularly over a period of years. Although such purchases of raisins are made through the local Miami broker of Plaintiff, the evidence shows that payment has been made, with few exceptions, by check or draft from Defendant to Sunland Sales Cooperative Association, a wholly-owned subsidiary of Plaintiff.

In view of the conclusion which has been reached by the Court that Defendant's trademark was not likely to cause confusion or to cause mistake or to deceive, and that the Defendant's trademark in fact did not confuse or deceive the consuming public, it appears unnec-

essary to examine the defenses of laches and estoppel. The Court is nevertheless impressed by the fact that Plaintiff failed to take any action over a period of years, during which time Defendant, by hard work and good fortune, built up a substantial business enterprise.

It is the conclusion of the Court that Plaintiff is not entitled to the relief sought.

Judgment will be entered in accordance with the present opinion.

The present opinion is written in compliance with Rule 52, Federal Rules of Civil Procedure.