455 So.2d 443 (1984)
The AMERICAN BANK of Merritt Island, Appellant,
v.
FIRST AMERICAN BANK and TRUST, Appellee.
No. 83-1477.
District Court of Appeal of Florida, Fifth District.
August 2, 1984.
Rehearing Denied August 23, 1984.
*444 Darryl M. Bloodworth of Dean, Mead, Egerton, Bloodworth, Capouano & Bozarth, P.A., Orlando, and John P. Ingle, III, of Spielvogel & Goldman, P.A., Merritt Island, for appellant.
Joe Teague Caruso of Wolfe, Kirschenbaum, Caruso, Mosley & Kabboord, P.A., Cocoa Beach, for appellee.
COWART, Judge.
This case involves the essential constituent elements of a civil cause of action (1) for injunctive relief against unfair competition resulting from infringement of a common law tradename (or mark or symbol), (2) for statutory damages for infringement of a registered service mark under section 495.131, Florida Statutes, and (3) for injunctive relief from injury to business reputation and dilution of service mark, tradename and form of advertisement under section 495.151, Florida Statutes.
Plaintiff-appellant, The American Bank, filed a three count second amended complaint against defendant-appellee, First American Bank and Trust, alleging in count one that commencing in 1976 plaintiff had actively engaged in the banking business under the tradenames "The American Bank of Merritt Island" and "The American Bank," and that by use of its name and distinctive letters and red, white and blue colors as symbols in advertising and otherwise, prior to 1982 its tradename and symbols acquired throughout Brevard County, Florida, a secondary or special meaning and significance as indicating or identifying its banking services and that plaintiff had acquired business goodwill and *445 that the public's recognition and association of its tradename and symbols with its good will and banking services constituted a significant asset of the plaintiff banking corporation. It is further alleged that prior to 1982 the defendant-appellee banking corporation, First American Bank and Trust, did banking business in Palm Beach County, Florida, but that in 1982, as the result of a merger, the defendant commenced doing banking business in Brevard County, Florida, under the name "First American Bank," "1st American Bank," "First American Bank & Trust" and "1st American Bank & Trust" and using a combination of red, white and blue colors in its advertising. It is further alleged the defendant's use of tradenames and advertising similar to that of the plaintiff has actually caused plaintiff's customers to transact, and attempt to transact, business with the defendant under the mistaken impression or belief that they were transacting business with the plaintiff and that the similarity of names and advertising symbols will likely cause similar confusion among plaintiff's customers and potential customers and the general public in Brevard County, Florida.
In count two it is alleged that the plaintiff has registered the name "The American Bank" as its trademark or service mark pursuant to chapter 495, Florida Statutes, and that by virtue of the facts alleged in count one and because of the defendant's knowledge that its mark is intended to be used to cause confusion or mistake or to deceive (§ 495.131(2), Fla. Stat.), the plaintiff is entitled to the remedies provided in section 495.141, Florida Statutes.
In count three it is alleged that by virtue of the facts alleged in counts one and two there exists a likelihood of injury to plaintiff's business reputation or of dilution of the distinctive quality of plaintiff's service mark, tradename and form of advertisement and that the plaintiff is entitled to injunctive relief under section 495.151, Florida Statutes.
The trial court dismissed plaintiff's second amended complaint with prejudice for failure to state a cause of action and the plaintiff appeals.
A cause of action for injunctive relief on the common law of unfair competition based on tradename or trademark infringement requires the following elements to be alleged and proved:[1]
(1) The plaintiff first adopted and used a certain name (or mark or symbol or logo or sign design) in a certain market or trade area, as a means of establishing good will and reputation and to describe, identify or denominate particular services rendered or offered by it (or goods made or sold by it) and to distinguish them from similar services rendered or offered (or similar goods marketed) by others, and
(2) through its association with such services or goods the plaintiff's tradename (or mark, etc.) has acquired a special significance as the name of the services rendered (or goods marketed) by the plaintiff in its trade area because plaintiff's tradename (or mark, etc.)
(a) is inherently distinctive (fanciful, novel or arbitrary),[2] or
(b) while generic, descriptive, or geographic, plaintiff's tradename (or mark, etc.) has, by actual usage, acquired in a certain trade area, a secondary, special or trade meaning[3] as *446 indicating, describing, identifying or denominating the plaintiff as the source of certain services (or goods), and
(3) the defendant has commenced, or intends to commence, the use of an identical or confusingly similar tradename (or mark, etc.) to indicate or identify similar services rendered (or similar goods marketed) by it in competition[4] with plaintiff in the same trade area[5] in which the plaintiff has already established its tradename (or mark, etc.) and
(4) as a consequence of the defendant's action, or threatened action, customer confusion of source or as to the sponsorship[6] of the services (or goods) offered, or to be offered, by the defendant is probable (likely) or inevitable.
Defendant-appellee argues that the plaintiff-appellant has not sufficiently alleged actual customer confusion. Plaintiff-appellant alleges in paragraph 9 that "defendant has caused confusion among plaintiff's customers" and "by its actions defendant has created great confusion and a continuing likelihood of confusion among not only plaintiff's customers, but also potential customers... ." This is sufficient to allege actual customer confusion. However, we do not agree that "actual" customer confusion is a correct statement of the rule of law although it has substantial probative value as to the correct "customer confusion" element.
The correct rule of law requires only a showing that customer confusion be likely or inevitable rather than to require actual confusion.
However, the test of infringement is likelihood of confusion, and the test of actual confusion is no longer the law. Actual confusion has also been held not necessary under state law, if the similarity is *447 such that confusion is probable and the intent was to cause such confusion.
Thus, a showing of actual confusion is unnecessary and very difficult to demonstrate, and a showing of the likelihood of confusion between the two names is sufficient. The weight of authority is that likelihood of confusion is a question of fact and in arriving at a conclusion all relevant factors should be considered in an overall perspective. Likelihood of confusion can be proved without any evidence of actual confusion, and since reliable evidence of actual confusion is difficult to obtain in trademark and unfair competition cases, any such evidence is substantial evidence of likelihood of confusion. [citations omitted]
74 Am.Jur.2d 780, Trademarks and Tradenames § 119 (1974).
In order to make out a case of unfair competition, however, it is not necessary to show that any person has been actually deceived by defendant's conduct and led to purchase his goods in the belief that they are the goods of plaintiff or to deal with defendant thinking he was dealing with plaintiff, it is sufficient to show that such deception will be the natural and probable result of defendant's acts. [citations omitted]
87 C.J.S. 325, Trade-Marks, etc., § 92 (1954).
Actual confusion need not be shown, but it is sufficient to show that confusion is probable, or likely to occur. This rule is universally recognized.
66 ALR 948 at 972; 115 ALR 1241 at 1247.
As a general ground for injunctive relief, the harm does not have to have actually occurred and the remedy is traditionally for protection from threatened or potential future injury likely to occur.
Defendant-appellee reads Junior Food Stores of W. Fla., Inc. v. Jr. Food Stores, Inc., 226 So.2d 393 (Fla. 1969), to require an allegation of actual confusion. We do not. Junior Food Stores involved two similar chains of small neighborhood convenience stores doing business in the Florida panhandle. The litigants stipulated their tradenames and signs were similar enough to cause confusion if used in the same location. The court found that the sole issue was the territorial scope of tradename protection and that the name of the defendant corporation (respondent in the supreme court certiorari case) had not yet acquired a "secondary meaning" and that it was the defendant corporation that had expanded from a distant area to the only area (Niceville in Okaloosa County) where both corporations did business and there the petitioner was established first. The facts in Junior Food Stores had already been established at trial whereas this case involves the sufficiency of allegations in the complaint. The customer confusion element or "test" is that because of similarity in trade names or symbols "customer confusion" as to the source of the services or goods offered by the defendant is likely (probable) or inevitable. Proof of that likelihood is sufficient and "the test is satisfied when it is shown by one seeking injunctive relief that, because of a similarity of tradenames, potential customers of the first appropriator of a tradename actually do business with a second appropriator under the mistaken impression that they are doing business with the first appropriator." (emphasis supplied) 226 So.2d at 397. While such proof at trial of actual confusion would certainly establish the likelihood of future confusion by "potential" customers this does not mean that the rule of law requires actual confusion or that the probability or likelihood of future confusion by actual or potential customers could not be established by other means.[7]
*448 By use establishing a "secondary meaning" plaintiff's name is subject to trademark protection. It cannot be held as a matter of law that the words "American Bank," which are common to the name of both parties, are not capable of causing customer confusion as to banking services rendered or offered by both parties in the same territorial trade area.[8] Whether or not plaintiff's name has acquired a secondary meaning by use, as is alleged in the complaint, and whether or not the defendant's use of its tradename (or marks or symbols) is likely to cause customer confusion, are questions of fact to be determined at trial. These issues are: (1) whether or not in fact a substantial number of present or prospective purchasers (the public) understand the plaintiff's tradename (or mark or symbol), when used in connection with banking services (in Brevard County, Florida), not in its primary lexicographical sense, but as referring to the plaintiff (long continued use of the tradename is evidence from which a "secondary meaning" may properly be inferred; but the inference is rebuttable); and (2) whether an appreciable number of prospective purchasers of banking services in Brevard County, Florida, are likely to regard the tradenames (or marks, etc.) of both parties as indicating *449 the same source.[9] Each count in the complaint in this case is sufficient to allege a separate cause of action and if plaintiff-appellant can establish the facts it has alleged, it is entitled to the relief and remedies it seeks.
REVERSED AND REMANDED.
ORFINGER, J., and STROKER, R.J., Associate Judge, concur.
NOTES
[1] See generally, 74 Am.Jur.2d, Trademarks and Tradenames, § 16 (1974); 87 C.J.S., Trade-Marks, Trade-Names, and Unfair Competition, § 87 (1954); Annot., Protection of business or trading corporation against the use of same or similar name by another corporation, 66 A.L.R. 948 (1930), supplemented 115 A.L.R. 1241 (1938).
[2] See 74 Am.Jur.2d, Trademarks and Tradenames, §§ 48-50 (1974); 87 C.J.S., Trade-Marks, etc., §§ 32, 35 (1954).
[3] See 74 Am.Jur.2d, Trademarks and Tradenames, §§ 64 et seq. (1974); 87 C.J.S., Trade-Marks, etc. §§ 90, 107b. (1954). See also Quality Courts United, Inc. v. Jones, 59 So.2d 20 (Fla. 1952); Williamson v. Answer Phone of Jacksonville, Inc., 118 So.2d 248 (Fla. 1st DCA 1960); Hoyt, Trade Names: Protection Accorded Under Secondary Meaning Doctrine, 6 U.Fla.L.Rev. 256 (1953).
[4] Because one's goodwill or reputation may be harmed by another's use of a tradename similar to that of the first, it is often stated that under most of the more recent cases actual or direct competition is no longer essential to injunctive relief from infringement of a tradename, trademark or unfair competition. See 74 Am.Jur.2d, Trademarks and Tradenames, § 124 (1974); 87 C.J.S., Trade-Marks, etc. § 88 (1954); Annot., Actual Competition as necessary element of trademark infringement or unfair competition, 148 A.L.R. 12 (1944). However, actual or intended competition appears to be essential to potential customer confusion, when the issue is the sameness or similarity in kind of the services or goods involved (substantive scope of protection) (see Sun Coast, Inc. v. Shupe, 52 So.2d 805 (Fla. 1951), and Annot., 148 ALR 12 at 33 (1944)), and when the issue is the territorial scope of tradename (or mark) protection (see Annot., 148 ALR 12 at 92 (1944)). Stagg Shop of Miami, Inc. v. Moss, 120 So.2d 39 at 42 (Fla. 2d DCA 1960), states:

[T]he right to a trade name in which a business is conducted is usually of only local extent, and the name will be protected against use by others only in the locality where the business is conducted and the name is known, the rights being coextensive with, and limited to, plaintiff's market.
Accordingly, the territorial scope of the defendant's use of its trade name can be crucial as to the establishment of the area in which the name has acquired a secondary meaning and the respective trade area in which the parties are each doing business is highly relevant to the probability of customer confusion. These are questions of fact which will often preclude a ruling as a matter of law that two particular tradenames are so dissimilar on their face as to avoid the probability of customer confusion. For these reasons we agree with Consolidated Electric Supply, Inc. v. Consolidated Electrical Distributors Southeast, Inc., 355 So.2d 853 (Fla. 3d DCA 1978), only if the complaint in that case failed to allege that the parties were in direct competition in the same trade area.
[5] See Annot., Unfair Competition: Geographical Extent of Protection of Word or Symbol under Doctrine of Secondary Meaning, 41 A.L.R.3d 434 (1972).
[6] As to the terms "confusion of source" and "confusion as to sponsorship," see Restatement (Second) of Torts, Tentative Draft No. 8 (1963), sec. 729, comment a. Because the subject of trade practices became governed extensively by legislation in many states this draft was withdrawn by, and has no official status with, the Council of The American Law Institute. However, the work has been referred to favorably by many courts in states where, as in Florida, the common law of unfair competition and of protection of tradenames and trademarks from infringement has not been superseded by statute. See Sec. 495.161, Fla. Stat. See also First Wisconsin National Bank of Milwaukee v. Wichman, 85 Wis.2d 54, 270 N.W.2d 168 (1978).
[7] Stagg Shop of Miami, Inc. v. Moss, 120 So.2d 39 (Fla. 2d DCA 1960), is another case involving territorial scope of tradename protection and facts established by trial. It does appear that in affirming the trial court's denial of relief the appellate court was disagreeing with the plaintiff's contention that "actual instances of direct competition or customer confusion" need not be shown but only "a possibility of close competition in the future." However, the actual holding in the case appears to be that as to the goods and customers involved the respective trade areas of the parties (West Palm Beach and Coral Gables) did not in fact cause even probable customer confusion. The court stated, "Normally where one business adopts the name of another business already in existence, but uses it in a place and with distinguishing characteristics which render it improbable that injury could thereby result to the original business, such use of the name will not be enjoined, in the absence of proof that injury has actually resulted therefrom." (emphasis supplied) 120 So.2d at 42.
[8] "American", when used with "Bank", is not a generic term, such as "shredded wheat" (see Kellogg Company v. National Biscuit Company, 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73 (1938)) or "light beer" (see Miller Brewing Company v. G. Heileman Brewing Company, 561 F.2d 75 (7th Cir.1977), cert. denied, 434 U.S. 1025, 98 S.Ct. 751, 54 L.Ed.2d 772 (1978)) because it does not connote a general meaning as to a category of banks of which plaintiff is merely a member nor does it describe the kind of services which plaintiff's bank offers. See, e.g., Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609, 611 (7th Cir.1965) ("Americana Hotel" is an arbitrary term "since it in no way suggests or describes hotel services"). Case law reveals that for one reason or another, the courts have always found tradenames containing the word "American" to be susceptible of appropriation. Some courts hold that the term "American" is not geographical at all because it is not used geographically to distinguish a product or service from a similar product or service of foreign denomination. See, e.g., Hamilton-Brown Shoe Company v. Wolf Brothers and Company, 240 U.S. 251, 36 S.Ct. 269, 60 L.Ed. 629 (1916); American Plan Corporation v. State Loan and Finance Corporation, 365 F.2d 635 (3d Cir.1966), cert. denied, 385 U.S. 1011, 87 S.Ct. 719, 17 L.Ed.2d 548 (1967). In Hamilton-Brown Shoe Company, supra, the United States Supreme Court stated:

... We do not regard the words "The American Girl," adopted and employed by complainant in connection with shoes of its manufacture, as being a geographical or descriptive term. It does not signify that the shoes are manufactured in America, or intended to be sold or used in America, nor does it indicate the quality or characteristics of the shoes. Indeed, it does not, in its primary signification, indicate shoes at all. It is a fanciful designation, arbitrarily selected by complainant's predecessors to designate shoes of their manufacturer... .
36 S.Ct. at 271.
And in American Radio Stores, Inc. v. American Radio and Television Stores Corporation, 17 Del. Ch. 127, 150 A. 180 (1930), the court stated:
[A]s to the words "radio" and "stores" the complainant cannot complain if defendant makes use of them in its corporate title. Those words are purely descriptive and, when used by the complainant, have attached to them no meaning of a secondary nature. But when the word "American" is used in conjunction with them, a distinguishing mark is introduced and the complainant is entitled to be protected in its use of that distinctive feature of its name.
17 Del. Ch. at 131, 150 A. at 183.
See also Tisch Hotels, Inc. v. Americana Inn, Inc., 350 F.2d 609 (7th Cir.1965) ("Americana" Hotel is arbitrary term and therefore may be exclusively appropriated without a showing of secondary meaning). Some courts do regard the term "American" to be geographic in nature, but nevertheless allow the tradename containing the term to be protected under the secondary meaning doctrine. See, e.g., American Scientific Chemical, Inc. v. American Hospital Supply Corporation, 690 F.2d 791 (9th Cir.1982); American Optical Corporation v. North American Optical Corporation, 489 F. Supp. 443 (N.D.N.Y. 1979).
[9] See Restatement of Torts (the original not Second), Sec. 716, comment b. and Sec. 728, comment a.